**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

ROBERT C. CLIFTON, ET AL.

VERSUS

PROGRESSIVE PALOVERDE
INSURANCE COMPANY

CIVIL ACTION

NO. 14-395-SDD-RLB

**RULING**

Before the Court is Defendant, Progressive Paloverde Insurance Company's ("Progressive"), *Motion for Partial Summary Judgment*[1] seeking dismissal of the Plaintiffs' bad faith claims. Plaintiffs, Robert and Miriam Clifton ("the Cliftons"), allege that Progressive denied the Plaintiffs' uninsured motorists ("UM") claim in bad faith in violation of Louisiana Law.[2]

**I.    FACTUAL BACKGROUND**

On May 5, 2012, the Cliftons were involved in a "miss and run" on Interstate 10 Westbound in West Baton Rouge Parish, Louisiana. Miriam Clifton was driving. Robert Clifton was a front seat guest passenger. The Cliftons were involved in a single car collision as a result of evasive actions taken by Miriam Clifton to avoid a collision with another vehicle. A following motorist stopped to render aid to the Cliftons. State Trooper Jake Patin responded to the scene and, after interviewing the Cliftons and the following motorist and surveying the scene and the property damage, prepared a Uniform Motor Vehicle Traffic Crash Report ("Report").[3] According to Officer Patin, the

---
[1] Rec. Doc. 14.
[2] La. R.S. 22:1973 and La. R.S. 22:1892.
[3] Affidavit of Trooper Patin, Rec. 18-3.

26108

following motorist "corroborated the Clifton's statements regarding the accident".[4] The Cliftons were treated for injuries at an area hospital and released. The next day, Mrs. Clifton reported the accident to their insurance carriers, Progressive.[5] In her report to Progressive, Mrs. Clifton reported[6] as follows:

```
62  Q:   And can you briefly describe what happened in the accident?
63
64  A:   Yeah. Um, we were driving on I-10 west, headed towards Lafayette on the highway, and,
65       um, so I was thin right lane and I was driving, say, between 70, 75, the speed limit's 70
66       there. And, uh, the cars in front of me were startin' to slow down. So I made ready to
67       turn into the left, you know, pass over into the left lane. And, um, I looked, I checked, I
68       put my blinker on, and I didn't see anybody coming for a while back. So as I went to
69       make the move over into the left lane, this car comes, well, it was an SUV, I think, it was
70       big, just comes flying out of the left, um, down the road. And so as I get ready to move
71       over, I realize, oh, my gosh, he's not seeing me or not slowing down or speeding up, I'm
72       gonna hit him, or her, whoever it was.
73

98  Q:   Did the other vehicle stop?
99
100 A:   Nope.
101
```

It is undisputed that, at the time of the accident, Miriam Clifton was a named insured under Progressive Policy Number 52087845-1 which provided bodily injury liability coverage in the amount of $25,000 per person bodily injury UM with the same limits.[7]

Progressive contends that guest passenger Robert Clifton presented a liability claim against Miriam Clifton under Progressive's liability coverage. Progressive's liability adjuster determined Miriam Clifton was 100% at fault in causing the accident and paid the full liability limits of $25,000 to guest passenger Robert Clifton.

---

[4] *Id.*
[5] Rec. Doc. 18-2.
[6] Rec. Doc. 18-2.
[7] Rec. Doc. 14-3.

Progressive contends that "thereafter, Robert and Miriam Clifton presented a UM claim under their Progressive Policy".[8]

On June 6, 2013, Progressive denied the Cliftons' UM claim.[9] Progressive's denial of the Cliftons' UM claim expresses the following reasons:

> [Progressive has] not been able to confirm that another vehicle was involved in this loss, also the police report has Ms. Clifton at fault for careless operation, she was attempting to change lanes at the time of the loss. Also, the liability claim has accepted 100% liability for this loss.
>
> Due to the reasons stated above we are denying coverage for this subject [UM] claim at this time.[10]

Plaintiff's filed suit seeking to impose penalties on Progressive under Louisiana law owing to alleged bad faith in handling and denying the UM claim.[11] Progressive moves for summary dismissal of the plaintiff's bad faith claim.

## II. ANALYSIS AND REASONS

On June 27, 2014, Progressive Paloverde Insurance Company timely removed this matter.[12] The Court has subject matter over this case pursuant to 28 U.S.C. § 1332. Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact".[13] Considering the summary judgment evidence in a light most favorable to the non-moving party, if a reasonable jury could return a verdict in favor of the non-moving party, summary judgment must be denied. In

---

[8] Affidavit of Progressive's UM Adjuster, Stacy Rispoli. Rec. Doc. 14-3.
[9] Rec. Doc. 14-8.
[10] Rec. Doc. 14-8.
[11] Rec. Doc. 1-1.
[12] Rec. Doc. 1.
[13] *TIG Insurance Company v. Sedgwick James*, 276 F.3d. 754, 759 (5th Cir. 2002) citing *Anderson v. Liberty Lobby, Inc., 477* U.S. 242, 247, 106 S. Ct. 2505 (1986).

support of summary judgment Progressive contends that there is an absence of evidence of one or more elements of the plaintiff's bad faith claim.

Under Louisiana Law, to prevail on a bad faith claim against an insurer, plaintiffs must prove three elements: (1) the submittal of a satisfactory proof of loss to the insurance company, (2) the insurance company failed to timely pay within thirty or sixty days after the submittal of a satisfactory proof of loss, and (3) the insurers failure to timely pay was arbitrary, capricious, or without probable cause.[14] Louisiana's bad faith statutes are penal in nature and therefore must be strictly construed.[15]

### A. Satisfactory Proof of Loss

A satisfactory proof of loss for purposes of making a UM claim provides the insurer with facts that indicate (1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that the uninsured or underinsured driver was at fault; (3) that such fault gave rise to damages; and (4) the extent of damages.[16]

There is summary judgement evidence of a phantom vehicle i.e. miss-and-run driver, which allegedly caused Miriam Clifton to take evasive actions to avoid a collision thereby causing her to lose control of and crash her vehicle.[17] Progressive's policy defines an uninsured motor vehicle as:

> [a] vehicle… that causes an accident resulting in bodily injury or property damage without striking [you]… provided that the insured person can prove, through an

---

[14] La. R.S. 22:1892 and 22:1973; *Reed v. State Farm Mut. Auto Ins. Co.,* 857 So.2d 1012, 1020 (2013); *Hart v. Allstate Insurance Company*, 437 So.2d 823, 827 (1983).
[15] *Id.*
[16] *McDill v. Utica Mutual Insurance Company*, 475 So.2d 1085, 1089 (1985), citing *Hart* 437 So.2d at 828.
[17] The Police Report documents a passing driver (Rec. Doc. 14-5); Miriam Clifton's notice of loss statement provided to Progressive the day after the loss references an SUV "flying out of the left" which failed to stop (Rec. Doc. 18-2); the Affidavit of Trooper Jake Patin attests that a "witness corroborated the Clifton's statements . . . . Miriam Clifton did everything she could to avoid being struck [by a vehicle] which did not stop following the accident." (Rec. Doc. 18-3).

independent and disinterested witness, that the bodily injury or property damage was the result of the actions of another driver or another vehicle whose identity is unknown".[18]

Progressive argues that there is an absence of evidence of the existence of a miss-and-run driver from an independent and disinterested witness.[19] The cases cited by Progressive in support of its argument that Trooper Patin does not meet the definition of an independent and disinterested witness are distinguishable and in the Court's view inapposite.[20] On the record before it, the Court cannot conclude as a matter of undisputed fact that Progressive was reasonable in its conclusion that Trooper Patin, who related information he obtained from a third party at the scene, is not independent or disinterested.

Progressive also argues that the proof of loss was deficient for the reason that there is an absence of evidence of fault of the miss-and-run driver. Progressive contends that that "in response to the liability claim presented by Robert Clifton, [Progressive] found Miriam Clifton to be 100% at fault in causing the accident."[21] By this analysis, an insurer could effectively preempt UM claims by tendering the policy limits of its liability coverage upon an insurance adjuster conclusion that its insured driver was 100% at fault. It is true that as a matter of law, there is no UM/UIM coverage when the

---

[18] Rec. Doc. 14-4.
[19] In its UM coverage denial letter dated 6/6/2013 Progressive states that:
  "[w]e have completed our investigation into the above captioned loss. Our investigation . . . has revealed that this loss does not meet the definition of an Uninsured/Underinsured Motor vehicle. There has been no evidence submitted confirming an "uninsured/uninsured (sic) motor vehicle" was involved and nothing showing this was an automobile accident. . . and [we] have not been able to confirm that another vehicle was involved in this loss."
  Rec. Doc. 14-8.
[20] *McCoy v. U.S. Agencies*, 142 So.3d 1086, 1087 (La. App. 3rd Cir. 2014), involved a responding officer's testimony which was premised *solely* on the Plaintiff's account of the accident; *Matthews v. Shelter Insurance Company*, 959 So.2d 910, 911 (La. App. 1st Cir. 2007), involved other party on cell phone call at time of alleged miss and run accident. There was no evidence of any independent disinterested witness who observed the accident. Rather, the allegedly independent disinterested witness obtained information solely from the Plaintiff's description of the accident.
[21] Rec. Doc. 14-1, p.1.

insured driver is found to be 100% at fault, because under that scenario there is no at-fault uninsured or underinsured vehicle.[22] The question here is not whether there is summary judgment evidence of sole fault of Miriam Clifton, thereby negating UM coverage. Rather, the issue is whether there is an absence of evidence from which a reasonable jury could conclude that Progressive was arbitrary and capricious or without probable cause in reaching its conclusion that "based on all the information we have received, we have found Mrs. Clifton 100% at fault for this loss."[23] The Court finds that there is summary judgment evidence in the record,[24] when viewed in a light most favorable to the non-movant, from which a reasonable jury could conclude that Progressive lacked probable cause to conclude that Miriam Clifton was 100% fault.

### B. Timeliness

A 'satisfactory proof of loss' triggers the insurer's duty to timely adjust the claim. A 'satisfactory proof of loss', obligating an insurer to make payment or timely offer to settle, is that which suffices to fully apprise the insurer of the insured's claim.[25] The summary judgment evidence shows that on May 6, 2012 Miriam Clifton reported the loss to her insurer wherein she essentially reported that a speeding vehicle passing on the left caused her to take evasive action resulting in the crash which is the subject of the loss.[26] Although there is no record evidence of when Progressive obtained the police report of Trooper Patin's investigation of the subject accident, logic suggests that Progressive would have obtained the police report within a short time of its insured's

---

[22] *Breaux v. Government Employees Insurance Co.* 369 So. 2d 1335, 1338-1339 (1979) ("our uninsured motorist statute does not mandate protection under the host driver's uninsured motorist coverage when the sole cause of the accident is the negligence of the host driver.").
[23] Rec. Doc. 14-10 Progressive's UM coverage denial letter dated 11/1/2013.
[24] Note 16, *supra.*
[25] La. R.S. 22:1892; *Jones v. Johnson*, 56 So.3d 1016, 1021 (La. App. 2 Cir. 2010), citing *McDill* 475 So.2d at 1089.
[26] Rec. Doc. 18-2.

initial report of loss. The police report documents an unidentified motorist passing on the left. [27] More than a year later, on June 6, 2013 Progressive denied the Clifton's UM claim advising that "[w]e have completed our investigation into the above captioned loss. Our investigation . . . has revealed that this loss does not meet the definition of an Uninsured/Underinsured Motor vehicle. There has been no evidence submitted confirming an 'uninsured/uninsured (sic) motor vehicle' was involved and nothing showing this was an automobile accident."[28] Progressive further advised that it has "not been able to confirm that another vehicle was involved in this loss, also the police report has Mrs. Clifton at fault for careless operation, she was attempting to change lanes at the time of the loss. Also, the liability claim has accepted 100% liability for this loss."[29]

The duty of timely payment is triggered by the receipt of a satisfactory proof of loss. Inasmuch as material issues of fact remain in dispute as to whether Progressive reasonably and with probable cause found the proof of loss lacking, the issue of timeliness also remains matter of disputed fact.

### C. Arbitrary, Capricious, or Without Probable Cause

Progressive concedes that the phrase "arbitrary, capricious, or without probable cause" means "unjustified, without reasonable or probable cause or excuse".[30] Progressive contends that there is no UM coverage where the host driver is 100% at fault in the accident. Progressive also contends that UM coverage for a miss and run claim requires proof "by an independent and disinterested witness, that the injury was

---

[27] Rec. Docs. 14-5 and 18-1.
[28] Rec. Doc. 14-8.
[29] *Id.*
[30] Rec. Doc. 14-1 citing *La. Bag Company, Inc. v. Audubon Indemnity Company*, 999 So.2d. 1104, 1114 (2008).

26108

the result of the actions of the driver of another vehicle whose identity is unknown".[31] For the reason previously given, the Court finds that, when viewed in a light most favorable to the non-movant, there are material issues of fact as to whether Progressive's UM coverage denial was "unjustified, without reasonable or probable cause or excuse".[32]

III. CONCLUSION

The Court finds that material issues of fact preclude summary judgment in this case. The Court is unable to determine on the summary judgment evidence in the record that there is an absence of factual support for one or more elements essential to the Plaintiffs' bad faith claim. Progressive Paloverde Insurance Company's *Motion for Partial Summary Judgment*[33] is hereby DENIED.

Signed in Baton Rouge, Louisiana, on <u>April 6, 2015</u>.

_____
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[31] Rec. Doc.14-1 citing La. R.S. 22:1295 (1)(f).
[32] *Id;* Note 25, *supra.*
[33] Rec. Doc. 14.